# 16-2492-cr

To be argued by:
Allegra Glashausser

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

United States of America,

*Appellee,*

-against-

Robert Smith,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT ROBERT SMITH

Federal Defenders of New York, Inc.
 Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8742
Allegra Glashausser @fd.org

Allegra Glashausser
 *Of Counsel*

## **<u>Table of Contents</u>**

Table of Authorities ..........................................................................................................ii

Statement of Jurisdiction ................................................................................................1

Questions Presented .......................................................................................................1

Statement of the Case ....................................................................................................1

Statement of Facts ..........................................................................................................2

    Introduction ...............................................................................................................2

    The Complaint ..........................................................................................................3

    Suppression Motion and Request for a Hearing ...............................................4

    Trial .............................................................................................................................6

    Prosecution Case ......................................................................................................6

    Verdict ........................................................................................................................7

    Sentencing .................................................................................................................8

Summary of Argument ...................................................................................................9

Argument .......................................................................................................................11

i

Point I

The court should have granted Mr. Smith's motion
for a suppression hearing because there was a factual
dispute about whether the officers had probable cause
for an arrest. ................................................................................11

    A.       Burden of Proof and Standard of Review..**Error! Bookmark not defined.**

    B.       There was a sufficient factual dispute about what the
           officers observed to warrant a hearing. ..........................................13

Point II

The district court erred at sentencing by relying
on acquitted conduct to enhance Mr. Smith's
guideline sentencing range.............................................................16

    A.       Standard of review .......................................................17

    B.       Reliance on acquitted conduct is unconstitutional......................17

Conclusion.....................................................................................26

## Table of Authorities

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000) ................................................................. 19

*Blakely v. Washington*,
    542 U.S. 296 (2004) ............................................................. 18, 20

*Bousley v. United States*,
    523 U.S. 614 (1998) ................................................................. 17

*Duncan v. Louisiana*,
    391 U.S. 145 (1968) ................................................................. 19

*Gall v. United States*,
    552 U.S. 38 (2007) ................................................................. 23

*Jones v. United States*,
    526 U.S. 227 (1999) ............................................................. 18, 19

*McMillan v. Pennsylvania*,
    477 U.S. 79 (1986) ................................................................. 22

*Sparf v. United States*,
    156 U.S. 51 (1895) ................................................................. 18

*United States v. Arboleda*,
    633 F.2d 985 (2d Cir. 1980) ................................................... 12

*United States v. Barrios*,
    210 F.3d 355 (2d Cir. 2000) ................................................... 15

*United States v. Booker*,
    543 U.S. 220 (2005) ....................................................... 18, 21, 22

*United States v. Canania*,
    532 F.3d 764 (8th Cir. 2008) ................................................. 18

*United States v. Concepcion*,
    983 F.2d 369 (2d Cir. 1992) ................................................... 24

*United States v. Crosby*,
    397 F.3d 103 (2d Cir. 2005) ................................................... 23

*United States v. Delossantos*,
    536 F.3d 155 (2d Cir. 2008) ................................................... 12

*United States v. Faust,*
 456 F.3d 1342 (11th Cir. 2006) ........................................................ 18, 23, 24

*United States v. Finley,*
 245 F.3d 199 (2d Cir. 2001) ............................................................ 13

*United States v. Frias,*
 39 F.3d 391 (2d Cir. 1994) ............................................................... 24

*United States v. Gillette,*
 383 F.2d 843 (2d Cir. 1967) ............................................................ 14-15

*United States v. Gobbi,*
 471 F.3d 302 (1st Cir. 2006) ........................................................... 20

*United States v. High Elk,*
 442 F.3d 622 (8th Cir. 2006) .......................................................... 21

*United States v. Horne,*
 474 F.3d 1004 (7th Cir. 2007) ........................................................ 20

*United States v. Jass,*
 569 F.3d 47 (2d Cir. 2009) .............................................................. 17

*United States v. Lonzo,*
 793 F. Supp. 57 (N.D.N.Y. 1992) ................................................... 15

*United States v. Magallanez,*
 408 F.3d 672 (10th Cir. 2005) ........................................................ 21, 24

*United States v. Marquez,*
 367 F. Supp. 2d 600 (S.D.N.Y. 2005) ............................................ 15

*United States v. Mathurin,*
 148 F.3d 68 (2d Cir. 1998) .............................................................. 13, 14

*United States v. Mercado,*
 474 F.3d 654 (9th Cir. 2007) .......................................................... 18, 21

*United States v. Nelson,*
 193 F. App'x 47 (2d Cir. 2006) ...................................................... 13, 14

*United States v. Pena,*
 961 F.2d 333 (2d Cir. 1992) ........................................................... 12, 13, 14

iv

*United States v. Pimental*,
   367 F. Supp. 2d 143 (D. Mass. 2005) .......................................................................... 23

*United States v. Rubenstein*,
   403 F.3d 93 (2d Cir. 2005) .......................................................................... 23

*United States v. Sanchez*,
   517 F.3d 651 (2d Cir. 2008) .......................................................................... 17

*United States v. Vaughn*,
   430 F.3d 518 (2d Cir. 2005) .......................................................................... 17, 20, 21

*United States v. Warren*,
   453 F.2d 738 (2d Cir. 1972) .......................................................................... 13

*United States v. Watson*,
   404 F.3d 163 (2d Cir. 2005) .......................................................................... 14

*United States v. Watts*,
   519 U.S. 148 (1997) .......................................................................... 20, 21, 22

*United States v. White*,
   551 F.3d 381 (6th Cir. 2008) .......................................................................... 20

**Statutes**

18 U.S.C. § 922(g)(1) .......................................................................... 1, 7

18 U.S.C. § 924(c)(1)(A)(i) .......................................................................... 1, 7

18 U.S.C. § 3231 .......................................................................... 1

21 U.S.C. § 841(a)(1) .......................................................................... 1

28 U.S.C. § 3742(a) .......................................................................... 1

28 U.S.C. §§ 1291 .......................................................................... 1

**Other**

James J. Bilsborrow, <u>Sentencing Acquitted Conduct to the Post-Booker Dustbin</u>,
   49 Wm. & Mary L. Rev. 289 (2007) ...................................................................... 18, 19

Marguerite A. Driessen, <u>Challenging the Irrelevant Acquittal</u>,
   11 Geo. Mason L. Rev. 331 (2002) ............................................................................ 25

Hon. Nancy Gertner, Circumventing Juries, <u>Undermining Justice: Lessons from</u>
<u>Criminal Trials and Sentencing</u>,
   32 Suffolk U. L. Rev. 419 (1999) .............................................................................. 25

Barry L. Johnson, <u>If at First You Don't Succeed -- Abolishing the Use of Acquitted</u>
<u>Conduct in Guidelines Sentencing</u>,
   75 N.C. L. Rev. 153 (1996) ......................................................................................... 24

Harlan J. Protass, <u>Not Guilty? Go to Jail</u>,
   Nat'l L.J., Sept. 10, 2007 ............................................................................................. 25

<u>United States Sentencing Guidelines</u>
   § 2D1.1(b)(1) .................................................................................................................... 9

## Statement of Jurisdiction

This is an appeal from a final judgment rendered and entered on July 14, 2016, in the United States District Court for the Eastern District of New York (Hon. Brian M. Cogan), convicting appellant of possession with intent to distribute cocaine base. He was sentenced to 21 months of incarceration and three years of supervised release. A notice of appeal was timely filed on July 18, 2016. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court had jurisdiction pursuant to 18 U.S.C. § 3231.

## Questions Presented

1. Should the court have granted Mr. Smith's motion for a suppression hearing because there was a factual dispute about whether the officers had probable cause for an arrest?

2. Did the district court err at sentencing by relying on acquitted conduct to enhance Mr. Smith's guideline sentencing range?

## Statement of the Case

Robert Smith was convicted after a jury trial of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). The jury acquitted him of two additional counts related to possession of a gun. 18 U.S.C. § 924(c)(1)(A)(i) (unlawful use of a firearm); 18 U.S.C. § 922 (g)(1) (felon in possession of a firearm). On July 8, 2016, the court sentenced him to 21 months of incarceration

1

and three years of supervised release. The court also imposed a special assessment of $100.

This Court continued the appointment of the Federal Defenders of New York as counsel on appeal under the Criminal Justice Act.

## Statement of Facts

Introduction

After midnight on August 14, 2015, New York Police Department officers arrested appellant Robert Smith after chasing him through a Brooklyn building. Mr. Smith was charged with possession with intent to distribute cocaine base, possession of a gun, and possession of a gun in furtherance of drug trafficking.

Pre-trial, defense counsel moved to suppress the 0.908 grams of cocaine base found on Mr. Smith after his arrest, arguing the government had not shown that his warrantless arrest was lawful and disputing the government's allegations that officers had seen Mr. Smith do a "hand to hand" transaction and throw a silver object. First, counsel argued that the government's factual claims should not be credited because the government's submission included no affidavit from any officer involved in the arrest. Second, counsel, supported by an affidavit by Mr. Smith, challenged the officers' ability to observe any illegal activity because it was nighttime and the officers were behind Mr. Smith. Counsel requested a hearing. Despite contesting the essential facts relevant to whether the police had probable cause to arrest Mr. Smith, the court denied his motion without a hearing.

2

At trial, three NYPD officers testified that they saw Mr. Smith engage in what they thought was a very brief hand-to-hand drug transaction, even though none of them saw any drugs or money. Mr. Smith ran from the officers and they testified that they saw him throw a gun. The defense conceded that Mr. Smith possessed the 0.908 grams of cocaine base, but disputed that he had thrown a gun. The jury agreed, acquitting him of the gun counts, but convicting him of the drug count. Despite the jury's acquittal, the court relied on Mr. Smith's possession of a gun – the acquitted conduct – to enhance his sentence.

The Complaint

On August 14, 2015, Mr. Smith was arrested by the NYPD without a warrant. On August 19, 2015, Anthony Vidot, an NYPD detective uninvolved in Mr. Smith's arrest, filed a complaint in federal court. Dkt. No. 1.[1] The information in the complaint was based on Vidot's "review of records and reports relating to the investigation" and information "provided by another agent or law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement." Dkt. No. 1, ¶ 2. The complaint stated that on August 14, 2015, an anti-crime team of NYPD officers "observed" Mr. Smith "engage in a hand-to-hand transaction with an

---

[1] Numbers preceded by "A" refer to pages of the appendix, those preceded by "T" refer to pages of the trial transcript; those preceded by "PSR" refer to pages of the Pre-Sentence Report, submitted to the Court under separate cover and under seal. All citations to the docket are to ECF case number 15-cr-00448.

3

unknown individual." Dkt. No. 1, ¶ 4. Afterward, the "unknown individual" "yelled,"

"Yo, the boys," and Mr. Smith ran towards a building. Dkt. No. 1, ¶ 5. While running,

Mr. Smith "dropped a silver object on the ground." Dkt. No. 1, ¶ 5. "A member of

the NYPD anti-crime team recovered" the object, which was a gun. Dkt. No. 1, ¶ 5.

Mr. Smith was arrested. Back at the precinct, drugs were found in his hat. Dkt. No. 1,

¶ 7.

Suppression Motion and Request for a Hearing

　　　　　Pre-trial, Mr. Smith moved to suppress the drugs under the Fourth

Amendment, arguing that the government had not met its burden of showing that the

police had a sufficient basis to stop or arrest him.[2] Dkt. No. 11. He submitted an

affidavit establishing his standing, stating that he had drugs in his baseball cap. Dkt.

No. 11. Counsel argued that the government's factual allegations were insufficient to

show probable cause because the government had not submitted an affidavit from an

officer with personal knowledge of the facts. Dkt. No. 13. Additionally, Mr. Smith

disputed that the police could have seen what the complaint claimed, affirming in his

affidavit that he "did not engage in any illegal conduct that [he] believed to be visible

to the police" before the police pursued him, pointing out that it was nighttime and

the police were behind him. Dkt. No. 11.

---

[2] Mr. Smith did not argue for suppression of the gun and did not admit the gun belonged to him.

Because the government did not submit an affidavit from an officer with personal knowledge of Mr. Smith's arrest, and Mr. Smith submitted an affidavit disputing the veracity of the government's alleged facts, counsel argued that there was a factual dispute about what the police observed, and requested a hearing. Dkt. No. 11.

In response, the government claimed that there was no factual dispute that police saw Mr. Smith "engage in a suspected drug transaction and then run" and that the police saw Mr. Smith drop a gun while running. Dkt. No. 12. The government discounted Mr. Smith's affidavit entirely, arguing that his use of the word "believe" to describe what the police had the opportunity to see made his affidavit insufficient. Dkt. No. 12. In support of its motion, the government attached Vidot's unsigned affidavit. Dkt. No. 12. It submitted no affidavit from any of the officers involved in Mr. Smith's arrest. Because the government believed that no facts were disputed, it asserted no hearing was necessary. *Id.* (citing *United States v. Warren*, 453 F.2d 738, 743 (2d Cir. 1972) (affirming denial of a hearing because "the question was one of law, and the court treated it fully")).

The court denied Mr. Smith's motion for a hearing, stating that "if" what Vidot said in his affidavit "happened, then there was obviously probable cause for the arrest." A. 37-38. It said that if there was "any kind of circumstantial evidence to suggest that the police observations were somehow questionable or inaccurate or

5

could not have been the case or might have even been misperceptions, then I might

see the need for a hearing on it." A. 36-37. The court found that Mr. Smith's

"expression of belief that he doesn't understand how the police could have seen what

they say they saw" was "not enough." A. 36.

Trial

Prosecution Case

On August 14, 2015, around 12:47 a.m., Officer Mobeen Yasin, Hameed

Assaidi, and Officer Imad Beydoun were dressed in plain clothes and patrolling

around 2945 West 23rd Street in Brooklyn in an unmarked police car. T. 14-16, 86,

116-17. They got out of their car and saw Mr. Smith standing outside with another

man. T. 19, 21-22, 88-90, 118-19. The officers each testified that they saw the two

men do a "hand to hand" transaction, which lasted "less than five second[s]" or only a

"fraction" of a second. T. 22, 119. None of the officers saw any drugs or any money,

but they nonetheless believed it to be a drug transaction. T. 22, 63, 119.

The other man walked towards the officers, passing them. T. 22, 91, 98, 120.

The officers did not arrest him, but continued walking towards Mr. Smith. T. 23, 98-

99. The other man "pretty loudly" said, "Yo, the boys" three times. T. 23, 91, 121.

Yasin was about five to eight feet away when Mr. Smith started running. T. 23-24.

While in pursuit, Yasin claimed that he saw Mr. Smith "drop a loaded firearm."

T. 25. Beydoun, who was behind Yasin, and Assaidi, who was behind both Yasin and

6

Beydoun, also claimed to see Mr. Smith drop a gun. T. 93, 122. Assaidi found the gun "a few seconds" later and picked it up, explaining that there were a lot of people "walking by" and he did not want someone else to find it and take it away. T. 93-94.

Yasin chased Mr. Smith into the building, and about a minute after the chase began, he caught and arrested Mr. Smith. T. 28. Afterward, he used his radio to ask if "you got the burner," testifying that he meant "firearm" by the word "burner." T. 30. Beydoun responded, "no." T. 68. Later, Assaidi radioed that he had found a gun. T. 109. Although video captured the chase, it did not show any hand-to-hand transaction, Mr. Smith dropping a gun, or Assaidi picking up a gun.

Back at the precinct, Yasin found 17 twists of cocaine base, weighing 0.908 grams, in clear plastic wrap in Mr. Smith's baseball hat. T. 33, 83. The 17 bags were worth about $170. T. 138-39. Mr. Smith was also carrying $43, a lighter, and two cell phones. T. 33-34. Mr. Smith said that he had just gotten outside and that was his "first sale." T. 196. He "may have been" high or intoxicated. T. 197.

Verdict

The jury acquitted Mr. Smith of unlawful use of a firearm, 18 U.S.C. § 924(c)(1)(A)(i), and, in a bifurcated proceeding, also acquitted him of felon-in-possession of a firearm, 18 U.S.C. § 922 (g)(1). The jury convicted Mr. Smith of possession with the intent to distribute cocaine.

7

Sentencing

Growing up, Mr. Smith's mother and step-father were addicted to drugs and alcohol. A. 55; PSR 8. Mr. Smith did not know his father. PSR 7-8. When his parents were high, Mr. Smith would be responsible for taking care of his seven younger siblings. PSR 7-8. Mr. Smith started drinking when he was 15 years old and later developed substance abuse problems with both alcohol and marijuana. A. 55; PSR 8.

Despite his upbringing, Mr. Smith was a family-oriented person. Many family members were in court at sentencing to support him, including his fiancée, his mother, his aunts, his two children – Lyric, who was 14 years old, and Cinere, who was 11 years old, and his children's mother and grandmother. A. 54. Before his arrest, Mr. Smith provided $300 a week in child support and spent alternating weekends with his children. PSR 8. He also cared for Talieha, the daughter of his fiancée, who was 12 years old. PSR 8.

Mr. Smith told the court that he had made "wrong choices" and that he was "done with the streets." A. 56. Being incarcerated in the 11 months leading up to trial had been "eye-opening." A. 56. He understood the sacrifices his family had made to come to court to support him and the terrible situation he had put them in because of his actions. A. 56.

8

*Objection to use of acquitted conduct to enhance sentence*

The pre-sentence report ("PSR") found that Mr. Smith's base level offense was 12 and added a two-point enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1 (b)(1). PSR 4. Defense counsel argued that the weapon possession enhancement was not applicable because Mr. Smith was acquitted of possessing a gun. A. 46-48. The court asserted that it was not a "close call" and that it believed that Mr. Smith "certainly" had the gun because all "three police officers testified that he did." A. 48-49. The court stated that it could only find that he did not have a gun if all the officers were "lying" and had "concocted this story." A. 49.

The court concluded that Mr. Smith's criminal history category was III and that the offense level was 14. The court considered giving him an above guideline sentence because of the "serious[ness] of the crime," his criminal history, and because he had a gun while selling drugs, but believed that he was a person "who can have some value." A. 59. It sentenced him to 21 months incarceration, the bottom of the guideline range. A. 60. It also imposed a three-year term of supervised release.

## Summary of Argument

1.    Mr. Smith moved to suppress the drugs found in his hat after his warrantless arrest, stating that, given that it was nighttime and the police were behind him, the officers could not have seen him engage in any illegal activity before chasing and arresting him. In response, the government did not submit an affidavit from any of

9

the arresting officers, but nonetheless asserted that there was no factual dispute and that officers had probable cause to arrest Mr. Smith. The court denied Mr. Smith's motion without a hearing, stating that "if" the government's factual allegations were true there was probable cause for his arrest and that Mr. Smith's affidavit that the police could not have observed what they claimed was "not enough" to dispute the government's version of the facts.

Because a hearing was necessary to assess the credibility of the officers, determine whether they saw what they claimed, and whether they had probable cause for a warrantless arrest, this Court should find that the district court abused its discretion in denying Mr. Smith's motion without a hearing and remand his case for a suppression hearing.

2.  The jury acquitted Mr. Smith of possessing a gun, and yet, the sentencing court relied on his alleged weapon possession both to raise his guideline range and as a factor in considering the seriousness of his offense. The court should not have relied on acquitted conduct to enhance his sentence. Accordingly, this Court should vacate Mr. Smith's sentence and remand for resentencing.

10

**Argument**

<u>Point I</u>

> The court should have granted Mr. Smith's motion for a suppression hearing because there was a factual dispute about whether the officers had probable cause for an arrest.

Whether Mr. Smith's warrantless arrest was legal turned on an assessment of the credibility of the arresting officers. In motion papers, Mr. Smith argued the officers could not have seen any illegal activity before arresting him because it was nighttime and they were behind him. The government's response included no affidavit from the arresting officers. Instead, it attached an unsigned affidavit from an officer uninvolved in the arrest, stating that other officers saw Mr. Smith do a "hand to hand transaction" and saw him throw a silver object that they later determined was a gun. The district court's acceptance of the government's allegations as true, even though the government submitted no affidavit from an officer with personal knowledge of the circumstances leading to Mr. Smith's arrest, and despite Mr. Smith's affidavit disputing the veracity of the government's allegations, was an abuse of discretion.

Accordingly, this Court should remand Mr. Smith's case for the district court to conduct a suppression hearing.

A. <u>Burden of Proof and Standard of Review</u>

When moving to suppress evidence discovered after a warrantless arrest, the defense must "make a preliminary showing as to the circumstances of the arrest

11

sufficient to raise a question as to its legality." *United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992) (citing *United States v. Rivera*, 321 F.2d 704, 706 n. 1. (2d Cir. 1963)). Once the defense has shown a basis for the motion, the "burden shifts to the government to demonstrate that the search or seizure did not violate the Fourth Amendment." *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980) ("if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search"). *Accord United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (the "Government bears the burden of proof as to establishing probable cause").

An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *Pena*, 961 F.2d at 339 (citation and quotation marks omitted). Once the defense disputes the facts, the burden on the defense to show that a hearing is necessary is low. Indeed, the "question of how far, <u>if at all</u>, the moving defendant must go beyond showing that the arrest was without a warrant is not without its difficulties." *Pena*, 961 F.2d at 338-39 (citing *United States v. Rivera*, 321 F.2d 704, 706 n. 1. (2d Cir. 1963) (emphasis added)).

Indeed, a hearing is necessary even if the defendant's motion papers are brief or conclusory, especially if the defendant is denying the existence of a fact. *United*

*States v. Nelson*, 193 F. App'x 47, 48 (2d Cir. 2006) (remanding for evidentiary hearing because motion papers, while "brief," were "neither vague, nor obscure, nor unspecific" as to the contested fact); *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (remanding for a hearing when defendant stated that *Miranda* was not read, noting that "any statement that a specific event did not occur will normally be conclusory"). While hearings are not required if the defense raises only legal issues, *e.g.*, *United States v. Warren*, 453 F.2d 738, 743 (2d Cir. 1972) (affirming denial of a hearing because "the question was one of law, and the court treated it fully"), they are necessary to resolve any disputed issues of fact. *E.g., Pena*, 961 F.2d at 338-39 (remanding for a hearing because government's conclusory statement about confidential informant was insufficient to establish legality of search).

This Court reviews the district court's denial of a defendant's request for a suppression hearing for abuse of discretion. *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001).

B.    <u>There was a sufficient factual dispute about what the officers observed to warrant a hearing.</u>

Mr. Smith disputed the veracity of the government's allegations that provided the basis for probable cause for his warrantless arrest. He affirmed that he did not believe the police could have viewed any illegal activity because it was nighttime and the police were behind him. Mr. Smith's use of the word "believe" did not undercut

the value of his affirmation; he did not have to state that it was impossible for the officers to have viewed illegal activity to contest the officers' credibility given the conditions. While his affidavit was brief, it was sufficiently "definite, specific, detailed and nonconjectural" to contest the relevant facts. *See Nelson*, 193 F. App'x at 48 (defendant's "statement, while brief, was 'neither vague, nor obscure, nor unspecific'"); *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (conclusory statement in affidavit sufficient because "any statement that a specific event did not occur will normally be conclusory"); *Pena*, 961 F.2d at 338-39.[3]

In response, the government relied on an unsigned affidavit drafted by an officer who was uninvolved in Mr. Smith's arrest. This was insufficient. Courts do not rely on affidavits from defense counsel to substitute for a defendant's affidavit. *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (affidavit by attorney that did not allege personal knowledge insufficient). *Accord United States v. Barrios*, 210 F.3d 355 (2d Cir. 2000) (unpublished opinion) ("record does not reveal a submission to the district court of any affidavit from a person who had [ ] personal knowledge"). This same principle logically applies to the government's affidavits. *See United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) ("attorney allegations cannot provide the

---

[3] Mr. Smith clearly asserted standing over his hat and therefore had standing to move to suppress the drugs. The cases cited by the government about hearings being unnecessary when the defendant has not alleged a sufficient privacy interest are inapposite. *See Watson*, 404 F.3d 163, 166 (defendant "does not have an absolute right to an evidentiary hearing;" no hearing necessary because defendant failed to show standing).

14

Court with a basis for making a finding of fact"; finding a suppression hearing necessary because government submitted no affidavit); *United States v. Lonzo*, 793 F. Supp. 57, 58 (N.D.N.Y. 1992) ("the opposition filed by the Government must also include affidavits based upon personal knowledge"). An unsigned affidavit by an officer who had no personal knowledge of the relevant facts was insufficient to show that the government's version of the facts was correct.

Additionally, the government's response was inadequate because it ignored the substance of Mr. Smith's assertion that, given the conditions, the police could not have seen any illegal activity. Rather than provide any information about the ability of the police to observe Mr. Smith, the government simply stated incorrectly that there was no factual dispute that police saw Mr. Smith drop a gun and "engage in a suspected drug transaction." [4] That was precisely the issue in dispute.

This is a situation that required a hearing. The government said police saw illegal activity; Mr. Smith said he did not believe they could have, citing specific conditions of the evening making it difficult for them to observe him. Before accepting the government's allegations as relayed by someone who was not present at Mr. Smith's arrest, the district court should have held a hearing.

---

[4] The government's motion papers also overstated the facts laid out in the accompanying unsigned affidavit, which did not state that the officers saw drugs or money exchanged, or explain that, in their experience, the officers believed the "hand to hand transaction" to be a drug transaction.

15

Suppression was Mr. Smith's only defense to the drug charge and, at trial, the defense conceded that Mr. Smith possessed the drugs. The jury's verdict, acquitting him of the two counts related to possessing a weapon, however, indicated it did not believe substantial portions of the officers' testimony. Just as the jury assessed the officers' credibility at trial, the district court should have assessed the officers' credibility at a suppression hearing.

Accordingly, this Court should remand for a suppression hearing.

### Point II

The district court erred at sentencing by relying on acquitted conduct to enhance Mr. Smith's guideline sentencing range.

Here, the district court, over defense objection, enhanced Mr. Smith's offense level based on its finding that he possessed a weapon in relation to the crime of possessing drugs with the intent to distribute. Of course, this is the very conduct of which he was acquitted by the jury, which determined not only that Mr. Smith did not possess a weapon in connection with drug trafficking, but that he did not possess a weapon at all. By relying on the acquitted conduct, the court increased the guideline range to 21 to 27 months, from 15 to 21 months. This use of acquitted conduct to enhance Mr. Smith's sentencing range violated his rights to trial by jury and due process.

A.    Standard of review

     This Court reviews *de novo* whether the Constitution allows a sentencing court to rely on conduct of which the defendant was acquitted. *See, e.g.*, *United States v. Sanchez*, 517 F.3d 651, 661-62 (2d Cir. 2008) (issues of law are reviewed *de novo*). However, in *United States v. Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005), this Court held that, even "after *Booker*, a district court may sentence a defendant taking into account acquitted conduct." The *Vaughn* decision binds subsequent panels unless and until it is overruled *en banc* or by the Supreme Court. *See, e.g., United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 2128 (2010). Mr. Smith nevertheless challenges the correctness of *Vaughn* to preserve the issue for further review. *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (failure to raise claim on direct appeal constituted inexcusable procedural default).

B.    Reliance on acquitted conduct is unconstitutional.

     Mr. Smith submits that *Vaughn* was wrongly decided, and that a district court's reliance on acquitted conduct to determine a sentence violates a defendant's Fifth and Sixth Amendment rights by rejecting the proper role of the jury as the arbiter of guilt. First, the practice trivializes the jury's decision to acquit. Second, the practice eliminates the jury's historical role as a bulwark against government excess. For both of these reasons, acquittal enhancements are unconstitutional.

Reliance on acquitted conduct at sentencing "trivializes [the jury's] fact-finding function," and its binding determination of the defendant's legal innocence. *United States v. Canania*, 532 F.3d 764, 766 (8th Cir. 2008) (Bright, J., concurring). The Supreme Court has explained that a trial court's "authority to sentence derives wholly from the jury's verdict." *Blakely v. Washington*, 542 U.S. 296, 305-06 (2004). Just as courts may not direct a verdict of guilty and have no power to set aside an acquittal, courts cannot treat a jury's acquittal simply as an act of calculated fact-finding by reconsidering the truth of a verdict at sentencing. *See Sparf v. United States*, 156 U.S. 51, 105-06 (1895). The jury's finding of innocence is absolute, and a court cannot impose a different finding, thus "reducing the jury's role 'to the relative importance of low-level gatekeeping.'" *United States v. Booker*, 543 U.S. 220, 230 (2005) (quoting *Jones v. United States*, 526 U.S. 227, 244 (1999)); *see United States v. Mercado*, 474 F.3d 654, 662 (9th Cir. 2007) (B. Fletcher, J., dissenting) ("By considering acquitted conduct, a judge thwarts the express will of the jury ...."); *United States v. Faust*, 456 F.3d 1342, 1350 (11th Cir. 2006) (Barkett, J., concurring) ("[I]t is not the abstract dignity of the statutory maximum that is a stake ..., but the integrity of the jury right itself, the cornerstone of our criminal justice system."); James J. Bilsborrow, <u>Sentencing Acquitted Conduct to the Post-Booker Dustbin</u>, 49 WM. & MARY L. REV. 289, 322 (2007)("Given the Court's repeated admonitions that the punishment must be

18

authorized by the jury's verdict, it seems paradoxical to allow such judicial nullification.").

By revisiting the defendant's acquitted conduct at sentencing, a court also eliminates the jury's ability to act as a bulwark against an overreaching government. The Supreme Court long ago recognized that the jury provides a defendant with "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). The Court has explained that the Framers conceived of the jury not only as a neutral fact-finder, but as a body able to exercise independent political power, making it "the great bulwark of [our] civil and political liberties" between the individual and the state. *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). As the Court explained in *Jones*, in England,

> [t]he potential or inevitable severity of sentences was indirectly checked by juries' assertions of a mitigating power when the circumstances of a prosecution pointed to political abuse of the criminal process or endowed a criminal conviction with particularly sanguinary consequences. This power to thwart Parliament and Crown took the form not only of flat-out acquittals in the face of guilt but of what today we would call verdicts of guilty to lesser included offenses....
> 526 U.S. at 245.

The Framers enshrined the right to a jury trial not despite this "mitigating power," but because of it. The Court noted in *Jones* that the Framers drafted the Sixth Amendment in the wake of cases in England and the colonies that saw juries acquit defendants

who had been charged under unjust laws or who were being prosecuted for political reasons. "That this history had to be in the minds of the Framers is beyond cavil." *Id.* at 247. Accordingly, the authority of the jury on the defendant's culpability has been, and still is, a necessary element of the right to trial by jury, which is why "the judge's authority to sentence derives wholly from the jury's verdict." *Blakely*, 542 U.S. at 306. "Without that restriction, the jury would not exercise the control that the Framers intended." *Id.* The use of acquitted conduct at sentencing subverts this historic role. *See United States v. White*, 551 F.3d 381, 392-95 (6th Cir. 2008) (en banc) (Merritt, J., dissenting). For this reason as well, reliance on acquitted conduct violates the substance of the right to a jury trial.

The federal courts of appeals, including this Court in *Vaughn*, have based their decisions approving a trial court's reliance on acquitted conduct at sentencing on two grounds. First, courts have found that the Supreme Court's decision in *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), bars any attack on the validity of the use of acquitted conduct at sentencing. *See, e.g., Vaughn*, 430 F.3d at 525-26; *United States v. Home*, 474 F.3d 1004, 1006 (7th Cir. 2007); *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir. 2006). However, *Watts* addressed the practice only in the context of the Double Jeopardy Clause and, as the Supreme Court has explicitly recognized, did not address whether the use of acquitted conduct at sentencing violated the rights to a jury trial or due process. Second, courts have held that the Supreme Court cured any

20

constitutional problem by rendering the federal Sentencing Guidelines advisory in *Booker*, 543 U.S. 220. *See, e.g., Vaughn*, 430 F.3d at 527; *United States v. Mercado*, 474 F.3d 654, 657-58 (9th Cir. 2007); *United States v. High Elk*, 442 F.3d 622, 625 (8th Cir. 2006); *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir. 2005). But that misses the fundamental constitutional problem: reliance on acquitted conduct undermines the right to a jury trial and due process even in a post-*Booker* world. *Watts* was limited to the question whether sentencing based on acquitted conduct violated the Double Jeopardy Clause of the Fifth Amendment. The Court issued its decision in *Watts* without the benefit of full briefing or oral argument (*see Watts*, 519 U.S. at 171(Kennedy, J., dissenting)), and reversed the decision of the court of appeals based only on "the implications of the Guidelines" and the appellate panel's "erroneous views of [the Court's] double jeopardy jurisprudence." *Watts*, 519 U.S. at 154. Nowhere in its limited decision did the Court address the permissibility of acquittal enhancements as a matter of due process or the right to a jury trial. The fact that *Watts* failed to rule out all constitutional challenges to acquittal enhancements should no longer be a debatable proposition. Justice Stevens could not have been clearer in *Booker* that *Watts* did not address or resolve whether the Sixth Amendment permits punishment for acquitted conduct:

> In *Watts*, relying on *Witte*, we held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines. In neither *Witte* nor *Watts* was there any contention that the sentencing enhancement had

21

> exceeded the sentence authorized by the jury verdict in violation of
> the Sixth Amendment. The issue ... simply was not presented.

*Booker*, 543 U.S. at 240. The opinion then explained that *Watts* "presented a very

narrow question regarding the interaction of the Guidelines with the Double Jeopardy

Clause, and did not even have the benefit of full briefing or oral argument. It is

unsurprising that we failed to consider fully the issue ...." *Booker*, 543 U.S. at 240 n.4.

Thus, since the time that *Booker* clarified the content of the jury right, the Supreme

Court has provided the lower courts no guidance about whether the right to a jury

trial is violated by acquitted-conduct enhancements.

The Supreme Court has also not resolved whether this practice violates a

defendant's right to due process by permitting a defendant to be sentenced under a

lower standard of proof for conduct that Congress has elected to identify as a separate

element of a crime, not merely as a sentencing enhancement, and that the jury has

rejected. Although the Court decided in *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92

(1986), that consideration at sentencing of uncharged conduct under a preponderance

standard "generally satisfies due process," *Watts*, 519 U.S. at 156, the Court has not

addressed the more specific question whether the consideration of acquitted conduct,

in conflict with a jury's verdict, satisfies due process.

Nor is the constitutional problem eliminated by the fact that the federal

Sentencing Guidelines are now advisory. Regardless of the sentencing scheme used, a

trial court's express reliance on acquitted conduct in selecting the appropriate

22

sentence violates a defendant's constitutional rights by contravening the findings of the jury. Although *Booker* permits district courts to consider relevant conduct in calculating an advisory Guidelines sentence, it does not address the unique concerns raised by acquittal enhancements. The constitutional violation occurred here when the district court relied on conduct for which a jury had found Mr. Smith innocent.

At any rate, the advisory nature of the guidelines under *Booker* hardly means that acquittal enhancements lack significance in the real world of federal sentencing. A sentencing court is required to calculate and consider the defendant's guideline range, and they remain the benchmark or starting point for sentencing. *See, e.g., Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005); *United States v. Crosby*, 397 F.3d 103, 114-15 (2d Cir. 2005). "*Booker* introduced a 'hybrid' system in which sentencing 'is still profoundly influenced by the rules, namely the Guidelines.' " *Faust*, 456 F.3d at 1351 (Barkett, J., concurring) (*quoting United States v. Pimental*, 367 F. Supp. 2d 143, 151-52 (D. Mass. 2005)).

In Mr. Smith's case, for example, the court's consideration of acquitted conduct resulted in a higher sentencing range: without the enhancements, his offense level would have been 12 instead of 14 and his guideline range would have been 15 to 21 months rather than 21 to 27 months. The court sentenced Mr. Smith to the bottom of the range. Without the enhancement, his sentence likely would have been lower.

But the problem with acquittal enhancements goes well beyond the individual case. The question whether a defendant may be sentenced for conduct for which he was acquitted goes to the heart of the criminal jury system, and it impacts public confidence in the criminal justice system. A distinguished judge in this Circuit remarked that the practice is "bizarre," *United States v. Concepcion*, 983 F.2d 369, 393 (2d Cir. 1992) (Newman, J., concurring), and another called it "jurisprudence reminiscent of Alice in Wonderland ... [a]cquittal first, sentence afterwards." *United States v. Frias*, 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J., concurring) (quotation marks omitted). Judge Barkett has remarked that "it perverts our system of justice to allow a defendant to suffer punishment for a criminal charge for which he or she was acquitted." *Faust*, 456 F.3d at 1350 (Barkett, J., concurring) (quotation marks omitted). As another court summed up with admirable understatement, "[t]he defendant ... might well be excused for thinking there is something amiss." *Maqallanez*, 408 F.3d at 683.

Legal scholars have likewise explained that "[t]he message that a defendant may permissibly be punished for conduct for which a jury found him not guilty is so counterintuitive to ordinary citizens, that it cannot help but have a negative impact on public confidence in the criminal justice system." Barry L. Johnson, <u>If at First You Don't Succeed -- Abolishing the Use of Acquitted Conduct in Guidelines Sentencing</u>, 75 N.C. L. REV. 153, 185 (1996). Another scholar has urged that acquittal

24

enhancements should be abandoned based on the "negative public perception of sentencing someone based on conduct of which they were acquitted after a thorough examination in a full adversarial proceeding...." Marguerite A. Driessen, Challenging the Irrelevant Acquittal, 11 GEO. MASON L. REV. 331, 353-54 (2002); *see Bilsborrow, supra*, at 333 ("Instead of instilling notions of democratic accountability in the criminal justice system, the message conveyed to jurors is that their fact-finding was trivial."); Harlan J. Protass, Not Guilty? Go to Jail, NAT'L L.J., Sept. 10, 2007 (col. 1) (arguing that "[a]cquitted conduct sentencing ... goes against virtually everything we know and respect about the American criminal justice system"); Hon. Nancy Gertner, Circumventing Juries, Undermining Justice: Lessons from Criminal Trials and Sentencing, 32 SUFFOLK U.L. REV. 419, 433 (1999) ("There is something troubling about case law that minimizes the jury's unique contribution to the criminal justice process.").

These issues are illustrated by Mr. Smith's sentencing. Although the court stated that its reliance on acquitted conduct was appropriate because the preponderance standard was different than the jury's reasonable doubt standard, the court's comments made clear that its reliance on acquitted conduct was not related to the differing standards but rather was a simple disagreement with the jury's verdict. The court stated that Mr. Smith "certainly" had a gun, elaborating that it believed the officers would have had to "concoct" an elaborate lie for the court to find Mr. Smith

did not have a gun. This is not a situation where the court thought it was a close case and the lower standard of proof allowed it to find a fact differently than the jury. The court just thought the jury had gotten it wrong. This sort of disregard for the jury's verdict undermines the basic notions of due process and fundamental fairness in the criminal justice system.

In sum, the district court's consideration of acquitted conduct to enhance Mr. Smith's sentencing range violated the Constitution and caused him prejudice. Accordingly, a new sentencing should be ordered.

## Conclusion

For the reasons set forth above, the Court should remand for the district court to conduct a suppression hearing (Point I). Alternatively, the Court should vacate Mr. Smith's sentence and order a resentencing (Points II).

Dated:     New York, New York
           December 20, 2016

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU

_____

**ALLEGRA GLASHAUSSER**
Assistant Federal Defender
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8739

26